FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

2007 MAY -9  PM 1: 05

CLER~ ... ~T COURT
MIDDLE ~.~ ~ FLORIDA
FT MYERS DIVISION

JUAN MARTIN ALANIZ,

                 Petitioner,

vs.                         Case No.   2:03-cv-211-FtM-34-SPC

JAMES R. MCDONOUGH, Jr.,[1] SECRETARY,
DEPARTMENT OF CORRECTIONS,

                 Respondent.

_____/

## OPINION AND ORDER[2]

## I.

     Petitioner Juan Alaniz (hereinafter "Petitioner" or "Alaniz"), who is proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter "Petition") pursuant to 28 U.S.C. § 2254 on May 2, 2003.[3]  Petitioner challenges a state court judgment of conviction

_____

[1]James R. McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2]This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

[3]The Petition (Doc. #1) was filed in this Court on May 2, 2003; however, the Petition is considered filed when delivered to prison authorities for mailing and, absent evidence to the contrary, is assumed to be the date the inmate signed the document (April 29, 2003). Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).  If applicable, the Court will also give Petitioner the benefit of the mailbox rule with respect to his state court filings when calculating the one-year limitations period under 28 U.S.C. §
                                         (continued...)

SCANNED

23

for two counts of Capital Sexual Battery and one count of Lewd and Lascivious Assault entered in the Twentieth Judicial Circuit Court, Lee County, Florida.   The Petition raises the following three separate grounds:

(I)  Whether the state court erred by denying Petitioner the right to cross-examine state witnesses concerning certain matters pertaining to credibility violating Petitioner's Fourteenth Amendment right;

(II)  Whether the state court erred by denying Petitioner a new trial based on grounds that the victim recanted her trial testimony violating Petitioner's Fourteenth Amendment right;

(III)  Whether the trial counsel rendered ineffective assistance by not conducting an adequate pretrial investigation and trial preparation concerning the victim's potential recantation and/or seeking to dismiss the charges on grounds of unlawful acts by the prosecution violating Petitioner's Sixth and Fourteenth Amendment rights.

In compliance with the Court's Order (Doc. #5), on June 23, 2003, Respondent filed a Response to the Petition for Writ of Habeas Corpus (Doc. #9) (hereinafter "Response").   Respondent submitted numerous exhibits in support of the Response, including the post-conviction motions filed by Petitioner and the record on appeal from Petitioner's state court proceedings. (Doc. #12, Exhs. #1-#11.)  On July 9, 2003, Petitioner filed a Reply to the Response (Doc. #10) (hereinafter "Reply").  On September 2, 2003, Petitioner

---

[3](...continued)
2244(d).  Respondent concedes, however, that Petitioner's Petition was timely filed.

filed exhibits (Docs. #15, #16) in support of his Reply.   This case is now ripe for review.

## II.

Petitioner was charged, in case number 97-3917CF, with two counts of sexual battery on a child under the age of twelve (Counts I and II) and two counts of lewd fondling on a child under the age of sixteen (Counts III and IV).[4] Petitioner proceeded to a jury trial and was found guilty of both counts of sexual battery (Counts I and II) and one count of lewd fondling (Count III).   The trial court granted a judgment of acquittal on the remaining lewd fondling count (Count IV). On January 13, 2000, in accordance with the jury's guilty verdict, Petitioner was sentenced to life in prison on Counts I and II, and eighty-five months on Count III, the sentences to run concurrently.

On July 10, 2000, Petitioner filed a direct appeal to the Second District Court of Appeal arguing that the trial court erred when it granted the prosecution's motion *in limine*.   Exh. #1 at 8. Specifically, Petitioner appealed the trial court's decision to

---

[4]The Amended Information charged Petitioner with: attempt to commit a sexual battery on a child less than twelve years of age, by attempting to place his penis in union with or penetrating the child's mouth (Count One), and with the child's vagina (Count Two). Exh. #5 at 20 (Amended Information).   Additionally, the Amended Information alleged that Petitioner did unlawfully handle or fondle a child under the age of sixteen years, in a lewd, lascivious, or indecent manner, and by touching, rubbing, or sucking on her breasts with his hands or mouth (Count Three), and by touching or rubbing her vaginal area with his hands or fingers (Count Four).

exclude questions from cross-examination concerning the victim's prior alleged false accusations of neglect or physical abuse against her parents and evidence that the Petitioner's wife (the victim's mother) had an inappropriate relationship with another man during their marriage. __Id.__ at 9. The state filed a answer brief. Exh. #2. On November 15, 2000, in __Alaniz v. State__, 774 So. 2d 697, the Second District Court of Appeal *per curiam* affirmed the trial court's decision regarding the motion. Exh. #3. Petitioner did not seek a rehearing and mandate issued on December 12, 2000. Exh. #4.

On June 13, 2001,[5] Petitioner filed a post-conviction motion to the trial court pursuant to Fla. R. Crim. P. 3.850 raising the following grounds: (1) Petitioner was wrongly convicted based upon the victim's false statements that she has recanted since his conviction; (2) Petitioner's trial counsel was ineffective for failing to properly investigate the facts of the case; (3) Petitioner's trial counsel was ineffective for failing to obtain an expert witness to rebut the state's expert witness; and (4) Petitioner's trial counsel was ineffective for failing to bring forth impeachment evidence to discredit and impeach the victim and Petitioner's former spouse. Exh. #11 at 1-10. As such, Petitioner alleged that he is actually innocent and is being held in violation

---

[5]The trial court stamped the document as received on June 13, 2001. Attorney for Petitioner signed the document on June 8, 2001. *Compare* Response at 3 with Exh. #11 at 1.

of his Fifth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution.

The state filed its response on September 7, 2001.  Exh. #11 at 44.  On September 26, 2001, the trial court issued an order granting an evidentiary hearing and appointing counsel for Petitioner.  Exh. #11 at 156.  An evidentiary hearing was held on February 7, 2002, at which the victim, two of the victim's family members, and Alaniz's trial counsel testified.  Exh. #11.  The trial court issued a written opinion on February 11, 2002, denying Alaniz's Rule 3.850 motion.  Exh. #11 at 231-232.

In its February 11, 2002, Order, the trial court noted that an evidentiary hearing was necessary because although "the victim, herself, did not submit a sworn affidavit recanting her testimony," Alaniz's other family members had submitted sworn affidavits stating that the victim recanted her testimony.  Exh. #11 at 231-232.[6]  Nevertheless, after the evidentiary hearing, the trial court found that "the credibility of the witnesses who testified regarding the victim's recantation of trial testimony was extremely suspect and, accordingly, was of no effect or force."  Id. at 232.  With regard to Alaniz's ineffective assistance of trial counsel claims, the state court held that "trial counsel's actions were not

_____

[6]Respondent's Index incorrectly cites the Order denying Petitioner's 3.850 motion after an evidentiary hearing occurred at pp. 216-218.  Instead part of that Order appears at p. 225, but the full Order is at pp. 231-232.  See Doc. #12, Exh. #11.

deficient, nor did they fall below the level of competency required in this case." Id.

On March 4, 2002, Petitioner filed a notice of appeal to the Second District Court of Appeal regarding the trial court's ruling after the evidentiary hearing. Exh. #11 at 221. Petitioner claimed that the trial court erred when it: (1) found that recanted testimony was not newly discovered evidence and that the witnesses were not credible; and (2) erroneously permitted the state to read a portion of the witness' deposition into the record when that witness was in attendance, testified, and was subject to cross examination. Exh. #6. The state filed a brief in response on June 13, 2002. Exh. #7. Petitioner waived the reply brief. On December 6, 2002, the appellate court *per curiam* affirmed without a written opinion and mandate issued on January 3, 2003. Exhs. #9-#10.

### III.

#### A.

In a federal habeas proceeding, a petitioner is restricted in his ability to use an evidentiary hearing to develop facts to support his claim. A federal evidentiary hearing is only allowed if a petitioner was not at fault for failing to develop the factual basis for his claims in state court. Alternatively, if he was at fault, the conditions prescribed by § 2254(e)(2) must be satisfied to warrant such a hearing. Bradshaw v. Richey, 126 S. Ct. 602,

605-06 (2005); <u>Holland v. Jackson</u>, 542 U.S. 649, 652-53 (2004).

Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in [s]tate court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
>
>> (A)   the claim relies on -
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Even if an evidentiary hearing is not precluded by § 2254(e)(2), a federal evidentiary hearing is not required unless a petitioner demonstrates that he would be entitled to habeas relief on his claim(s) if his factual allegations are proven. <u>Breedlove v. Moore</u>, 279 F.3d 952, 960 (11th Cir. 2002). The Court has carefully reviewed the record herein and concludes that Petitioner is not entitled to an evidentiary hearing.

B.

Because Petitioner filed his Petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y for Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA establishes a highly deferential standard of review for state court judgments. Parker v. Sec'y for Dept. of Corrections, 331 F.3d 764 (11th Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Several aspects of § 2254, as amended by the AEDPA, are relevant to reviewing this Petition.

C.

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the ground that petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States. 28 U.S.C. § 2254(a). A violation of state law is insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

D.

If the grounds asserted warrant review by a federal court under § 2254, a petitioner must have afforded the state courts an opportunity to address the federal issues.    28 U.S.C. 2254(b)(1)(A); <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S. 963 (1998).    "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."    <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).    <u>See also</u> <u>Henderson</u>, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Snowden</u>, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1999)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."    <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1136 (2002).    Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar

federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson, 353 F.3d at 891 (quoting Judd v. Haley, 250 F.3d at 1313).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. Henderson, 353 F.3d at 892.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default.  Id.  "Cause" ordinarily requires a petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Id.; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995), cert. denied, 519 U.S. 838 (1996).  To show "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson, 353 F.3d at 892.  Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a

constitutional violation has resulted in the conviction of someone who is actually innocent." <u>Henderson</u>, 353 F.3d at 892; <u>House v. Bell</u>, 126 S. Ct. 2064 (2006).

"'[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have this otherwise barred constitutional claim considered on the merits." <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993).   To make a showing of actual innocence, a petitioner must present new evidence, which would establish that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt. <u>House v. Bell</u>, __ U.S. __, 126 S. Ct. 2064 (2006); <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1205 (11th Cir. 2004).   A petitioner must produce reliable evidence that was not presented at trial.   <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).   The Supreme Court, in assessing the adequacy of a petitioner's showing, stated:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

-11-

Schlup v. Delo, 513 U.S. at 329.

E.

Even where the claim is federal in nature and has been properly exhausted, additional § 2254 restrictions apply.  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision.  Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law.  Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003); Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).  A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if (1) the state court applies a rule

-12-

that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown</u>, 544 U.S. at 141; <u>Stephens v. Hall</u>, 407 F.3d 1195, 1202 (11th Cir. 2005)(citations omitted). A state court decision does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Secretary</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but applies it to the facts of the particular inmate's case in an objectively unreasonable manner; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. <u>Brown</u>, 544 U.S. at 1439; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000). The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. <u>Mitchell</u>, 540 U.S. at 17-18; <u>Andrade</u>, 538 U.S. at 75-77; <u>Vincent</u>, 538 U.S. at 639; <u>Woodford v.</u>

Visciotti 537 U.S. 19, 25 (2002); Williams v. Taylor, 529 U.S. 362, 409-10 (2000). Depending upon the legal principle at issue, there can be a range of reasonable applications. Alvarado, 541 U.S. at 663-64. Thus, a federal court's review is not *de novo*, but requires a showing that the state court decision is objectively unreasonable. Id. at 665-66.

### F.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where credibility is at issue, relief may only be granted if it was unreasonable for the state court to credit the testimony of the witness. Rice v. Collins, 126 S. Ct. 969, 974 (2006). Additionally, a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 125 S. Ct. 2317, 2325 (2005); Henderson, 353 F.3d at 890-91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001). An ineffective assistance of counsel claim is a mixed question of law and fact, Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir. 2006), cert.

denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006), and

therefore the presumption does not apply to determinations of the

ineffective assistance of counsel.

## G.

"The Sixth Amendment guarantees criminal defendants effective

assistance of counsel.   That right is denied when a defense

counsel's performance falls below an objective standard of

reasonableness and thereby prejudices the defense." Yarborough v.

Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).   In

Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court

established a two-part test for determining whether a convicted

person is entitled to habeas relief on the ground that his or her

counsel rendered ineffective assistance:[7] (1) whether counsel's

representation was deficient, i.e., "fell below an objective

standard of reasonableness" "under prevailing professional norms";

and (2) whether the deficient performance prejudiced the defendant,

i.e., there was a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different.   Strickland, 466 U.S. at 687-88.   "The petitioner's

burden to prove, by a preponderance of the evidence, that counsel's

performance was unreasonable is a heavy one." Jones v. Campbell,

---

[7]After the AEDPA, the Strickland v. Washington, 466 U.S. 668
(1984) standard remains applicable. E.g., Bradshaw v. Richey, 516
S. Ct. 724 (2005).

436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 619 (2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000)(quoting <u>Strickland</u>, 466 U.S. at 690).   "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 125 S. Ct. 2456, 2462 (2005) (citations omitted).   If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> at 2467 (citation omitted).

This judicial scrutiny is "highly deferential." <u>Roe</u>, 528 U.S. at 477.   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689-90.   An attorney is not ineffective for failing to raise or preserve a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

[A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.' Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: 'Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.' Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. See Chandler, 218 F.3d at 1315.

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. 'It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test.' Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists

that the outcome of the case would have been
different if his lawyer had given adequate
assistance. See Id. at 2068.[8]

Van Poyck, 290 F.3d at 1322-23 (footnotes omitted). In sum,

"[w]ithout proof of both deficient performance and prejudice to the

defense, . . . it [can] not be said that the sentence or conviction

'resulted from a breakdown in the adversary process that rendered

the result of the proceeding unreliable,' and the sentence or

conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002)

(internal citation omitted) (quoting Strickland, 466 U.S. 668, 687

(1984)).

## IV.

Ground I: state trial court erred by denying
Petitioner the right to cross-examine state
witnesses concerning matters of credibility
violating Petitioner's Fourteenth Amendment
right

Petitioner alleges in broad terms that his due process rights

were violated when the trial court did not permit his defense

counsel to cross-examine the victim, who is his daughter, and the

Petitioner's wife, who was the primary witness for the state, by

asking questions that may have weakened the witnesses' credibility.

Petitioner states, "the victim's [sic] and the primary state's

---

[8] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved." Davis v. Sec'y
for Dept. of Corrections, 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

-18-

witness [sic] was the only evidence produced at trial." Petition at 5.

Specifically, Petitioner asserts that the trial court erred when it granted the state's motion *in limine* concerning the introduction of certain evidence on cross-examination. In particular, the state's motion *in limine* moved to preclude questions or references as to whether the child victim: (1) reported to school officials that her parents had left her alone while living in Lubbock, Texas at approximately six years of age; (2) spoke to officials or the department of HRS about bruising or injury to her leg caused by a fall or parental hitting in 1990 at five years of age in Lee County, Florida; (3) whether Petitioner's wife had an inappropriate relationship with a man while living in Lubbock, Texas; and (4) whether investigators from the Department of Children and Families came to the victim's home in May, 1998, several months after the Petitioner's arrest, to question her family about marks on the victim's face.[9] Exh. #5 at 28. The state contended that the above-referenced matters should be precluded because the matters were incompetent, irrelevant, or immaterial and would unfairly prejudice the jurors. Exh. #5 at 28. The trial court granted the state's motion *in limine* finding that

_____

[9] In a separate motion *in limine*, the state sought to preclude any references to the possible sentence Alaniz could face upon conviction, which the court denied. Id. at 30, 32.

those matters amounted to inadmissible hearsay and did not relate to Alaniz's case.  Id. at 28-32, 45; Response at 7-8.

Respondent argues that Ground One involves a state law issue and the determination whether to limit cross-examination is at the trial court's discretion.  Response at 7.  Further, state-court evidentiary hearings cannot rise to the level of a due process violation unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  Id. at 11.  Additionally, Respondent contends that Ground One is procedurally defaulted because Petitioner did not raise federal constitutional arguments regarding this claim in a timely manner at trial or on direct appeal and has failed to demonstrate any exceptions to procedural default.  Id. at 8-9.

Petitioner alleges in his Reply (Doc. #10) that he "fairly presented" this issue to the state courts.  The Court disagrees with Petitioner and concludes that Ground One is procedurally defaulted.  Petitioner failed to raise any federal constitutional issue with respect to the trial court's evidentiary ruling in a timely manner at trial, or on direct appeal.  Rather, Petitioner presented this issue for review in the state courts arguing only matters of state law.  Petitioner objected to the trial court's decision to grant the state's motion in limine when he filed a motion for a new trial, the motion relied upon only state law. Exh. #5 at 51-56, 62-65.  Similarly, Petitioner's direct appeal

argued that the trial court erred in not allowing the defense counsel to present evidence that casts doubt on the credibility of the victim and her mother based on only state law grounds. Exh. #1 at 8-11. Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds. Duncan v. Henry, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Petitioner did raise federal constitutional issues with regard to the trial court's ruling on the motion in limine in his subsequent Rule 3.850 motion;[10] however, under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a 3.850 motion. Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir. 1990), cert. denied, 498 U.S. 832 (1990); Sampson v. State, 845 So. 2d 271, 272 (Fla. 2d DCA 2003). Consequently, the Court finds that Ground One is procedurally barred pursuant to Duncan, 513 U.S. at 365-366, and Harmon, 894 F.2d at 1270-1271, unless Petitioner can show cause and prejudice for his failure to exhaust, or demonstrate a fundamental miscarriage of justice. Here, Petitioner has not shown cause and actual prejudice, nor has he demonstrated that he meets the requirements of the fundamental

---

[10] See Petitioner's Ground Four in his 3.850 motion. Exh. #11 at 9.

miscarriage of justice exception.   Therefore, the Court concludes that Ground One is procedurally barred.

Assuming *arguendo* that Petitioner could establish an exception to the procedural default doctrine, Petitioner is still not entitled to relief.   "It is not the province of a federal court to reexamine state-court determinations of state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991).   A claim that an evidentiary ruling was allegedly incorrect under state law is not a basis for federal habeas relief.   Id. at 72.   ("Nor do our habeas powers allow us to reverse [a petitioner's] conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case.")

The trial court's ruling concerning admissibly of evidence, in this case whether precluded testimony amounts to inadmissible hearsay, is governed by Florida law and the federal court will not ordinarily review the trial court's actions involving the admission of evidence.   Nettles v. Wainwright, 677 F.2d 410, 414-415 (5th Cir. 1982).[11]   Additionally, it is within the state court's discretion whether a trial court's limitation of cross-examination satisfies the state's relevancy/balancing test.   See Fernandez v.

---

[11]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

State, 730 So. 2d 277 (Fla. 1999) (determining whether certain evidence is admissible is made in the context of the relevancy test and trial judge must apply the balancing test). The United States Supreme Court has rejected the notion that the Due Process Clause guarantees the right to introduce all relevant evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (citations omitted). "Of course, to say that the right to introduce relevant evidence is not absolute is not to say that the Due Process Clause places no limits upon restriction of that right." Id. at 42-43. A federal court will, however, inquire into a state court's evidentiary ruling when the ruling deprives a petitioner of fundamental fairness. Id. at 43; Marshall v. Lonberger, 459 U.S. 422, 438 ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). As previously stated, under AEDPA, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Thus, Petitioner would have to establish that the trial court's decision concerning the admissibility of certain matters on cross-examination violated a "fundamental principle of justice" under the Fourteenth Amendment. Montana, 518 U.S. at 43. Petitioner fails to do so.

Although the trial court did not permit the line of questioning regarding whether the victim made prior allegations of neglect/physical abuse against her parents and the victim's

mother's alleged extra-marital relations, as Respondent notes the trial court "did not . . . preclude inquiry into prior allegations of sexual abuse, if any" and the defense counsel was "given sufficient latitude . . . to explore motive or bias of a state witness." Response at 13, 15. Thus, in the instant case, the Court cannot say that Petitioner was denied a fair trial in accordance with the traditional and fundamental standards of due process.

Moreover, in addition to the victim and Petitioner's former spouse testifying, other witnesses testified. Specifically, the victim's nine-year old sister testified that she saw Petitioner pull the victim "[b]y the hair" to the bedroom while she remained in the living room. Exh. #5 at 139-141. Additionally, the State produced independent medical evidence to show that there was penile penetration of the victim's vagina. Id. at 98-99. In light of the corroborating evidence, even if the Court determined that there was a constitutional error, which it does not, the trial court's decision to limit the inquiry on cross-examination did not have a "substantial and injurious effect or influence" on the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 622-623 (1993) (citation omitted).

**Ground II:  State court erred by denying Petitioner a new trial based on the victim recanting her trial testimony violating Petitioner's Fourteenth Amendment right**

In Ground Two, Petitioner alleges due process violations based upon the trial court's denial, after holding an evidentiary hearing, of Petitioner's request for a new trial based on newly discovered evidence.  Specifically, Petitioner contends that the post-conviction letter, which the victim wrote him, states that his wife (the victim's mother) coerced the victim to lie about the sexual abuse in order to get Petitioner out of the home.  Petition at 6.

Respondent argues that whether the recanted testimony constitutes "newly discovered evidence" is a matter determined by state law, and a federal writ of habeas corpus is not intended to enforce state-created rights.  Response at 15-16, citing <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th Cir. 2000).[12]  Further, Respondent argues that to the extent Petitioner now alleges a claim of actual innocence based on the alleged newly discovered evidence, this type of claim has never been held to state a ground for federal habeas relief absent an independent constitutional

_____

[12]Florida's test for determining whether evidence is "newly discovered" requires that the evidence consist of facts unknown at the time of trial and the defendant or defense counsel could not have known those facts by the use of diligence.  <u>Jones v. State</u>, 591 So. 2d 911, 916 (Fla. 1991).  Thus, Respondent argues that the standard is a state law matter and does not raise a federal constitutional question.  Response at 16.

violation occurring in the underlying state criminal proceeding. Response at 16-17, citing Herrera v. Collins, 506 U.S. at 400. Alternatively, Respondent argues that the Petitioner has procedurally defaulted Ground Two by not raising the constitutional dimensions in his Rule 3.850 motion, at the state evidentiary hearing, and on collateral appeal. Response at 18.

The Court agrees that Ground Two does not merit habeas relief. In this case, Petitioner contends that he is in fact actually innocent based on a post-conviction recantation. To the extent Petitioner contends that new facts support his innocence, the situation is analogous to Herrera, 506 U.S. 390. Petitioner does not raise actual innocence as a means to overcome a barred constitutional claim. Rather, Petitioner contends that he is entitled to a new trial based on the alleged newly discovered evidence that was not available during his trial and that his conviction is factually incorrect. However, as previously stated, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Id. at 400. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution- not to correct errors of fact." Id. (citations omitted). "Federal habeas review of state convictions has

-26-

traditionally been limited to claims of constitutional violations occurring in the course of the underlying state criminal proceedings." Id. at 415.

After appointing Petitioner counsel, the trial court conducted an evidentiary hearing pertaining to all of the matters raised in Petitioner's 3.850 motion, which included the issues Petitioner now raises concerning the alleged newly discovered evidence, specifically the victim's recanted testimony.   Doc. #12, Exh. #11 at 156, 159.  Noting the period of time that had passed since the victim decided to recant and considering the testimony from the victim and several of Alaniz's relatives, the trial court found the credibility of the witnesses "extremely in question."  Id. at 211. The trial judge noted that "it's obvious to [him] that the language that [the victim] used is certainly not the language that was written in this letter."  Id.  The trial judge further opined that the situation appeared to him to be "a very thinly-veiled attempt on the part of the family to change a result that was found by a jury of six people after they had the opportunity to test the credibility of the witnesses at the time of the trial."  Id. at 212.

The Court concludes that the trial court's decision was not based on a decision contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.  The trial court's decision is supported by the record.

The victim testified during the evidentiary hearing that her uncle helped her with the recantation letter and told her what to write. Id. at 173.  In contrast, the uncle and his wife testified that they did not help the victim write the letter.  Id. at 187, 197. As the trial judge noted, the language in the letter was suspect, particularly that a letter alleged to be written by the victim to her father began with the phrase "To Whom I [sic] May Concern". Id. at 173, 27.  Further, the victim acknowledged that prior to her father's trial, she met with his predecessor counsel who advised that she could recant her earlier allegation by giving a statement under oath, but she chose not to recant her statement at that time. Id. at 174-176.  The victim explained that she did not recant prior to trial because she "wasn't sure."  Id. at 175.  The judge found that "the recantation certainly is not newly discovered evidence, based on the evidence from Mr. Cerino (Petitioner's trial counsel) . . . that Adam Levy (the initial defense counsel) went to the Veranda . . . with these witnesses for lunch [prior to trial] to determine whether or not she was going to recant."  Id. at 212.

Based on the record, the Court finds that there are no grounds to disturb the state trial court's finding that the recantation was not credible and did not constitute newly discovered evidence, thus denying Alaniz a new trial.  Even if the trial court found the recantation to be credible, which it did not, the recanted testimony is not a basis for federal habeas corpus relief absent an

independent constitutional violation occurring in the underlying state criminal proceedings. Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002) (quoting Herrera, 506 U.S. 390, 400 (1993) (citations omitted)). Similarly, the trial court's determination that the victim's recantation did not constitute "newly discovered evidence" is a matter of state law and the federal writ of habeas corpus is not intended to enforce state-created rights. Cabberiza, 217 F.3d at 1333. As such, Ground II fails to warrant federal habeas relief.

> Ground III: trial counsel rendered ineffective assistance by not conducting an adequate pretrial investigation and trial preparation concerning the victim's potential recantation and/or seeking to dismiss the charges on grounds of unlawful acts by the prosecution violating Petitioner's Sixth and Fourteenth Amendment rights

Petitioner argues that his trial counsel provided ineffective assistance because he failed to investigate the victim's pre-trial recantation and failed to seek a dismissal of the charges due to the prosecution's threats to the victim and to Petitioner's wife, if they failed to testify. Specifically, Petitioner contends that the victim admitted to Petitioner's first defense counsel, Adam Levy, that she lied, but was afraid to come forward because of purported threats by the assistant state attorney. Petition at 8. Petitioner states his subsequent trial counsel failed to

investigate the victim's recantation or move to dismiss based on the alleged unlawful acts by the prosecution. <u>Id.</u>

Respondent avers that both claims raised in Ground Three are procedurally barred. Response at 20. First, with respect to the alleged prosecutorial threats, Petitioner did not allege that the victim had been threatened by the assistant state prosecutor in his 3.850 motion. <u>Id.</u> As such, any claim based on this new assertion is now barred by the two-year limitation on rule 3.850 motions and the state's successive petition bar. Second, with regard to the ineffective assistance of counsel claim that Petitioner did include in his 3.850 motion, Respondent points out that Petitioner did not appeal the trial court's denial of his ineffective assistance of counsel claim. <u>Id.</u> at 21.

The Court agrees that Ground Three is procedurally barred based on Petitioner's failure to exhaust his state remedies and therefore will not address the merits of Petitioner's claim under <u>Strickland v. Washington</u>, 466 U.S. 668. In Florida, exhaustion of a rule 3.850 claim includes an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979). As previously discussed, Petitioner filed a 3.850 motion with the trial court raising four grounds. In three of those grounds, Petitioner argued that his trial counsel was ineffective. Included among the ineffective assistance of counsel claims, Petitioner alleged that trial counsel was ineffective for failing to properly investigate

facts of the case, specifically the victim's potential recantation prior to trial and the victim's fear of retaliation by the State Attorney's Office if she recanted. Doc. #12, Exh. 11. The trial court held an evidentiary hearing including all of the grounds Petitioner raised in his 3.850 motion. After hearing testimony, including testimony from Petitioner's trial counsel, the trial judge denied Petitioner's motion finding "that [counsel] did not fall below the level of competency that's required." Id. at 212.

After the trial court held the evidentiary hearing, Petitioner filed an appeal to the Second District Court of Appeal raising two issues. Petitioner's first issue concerned the trial court's finding that the victim's recantation was not newly discovered evidence and second that the trial court erroneously permitted the state to read a portion of the victim's depositions into the record when the victim was in attendance. Exh. #6. Neither of the issues Petitioner raised on appeal to the Second District Court of Appeal concern Petitioner's ineffective assistance of counsel claims identified in Ground Three of the instant Petition.. As such, Petitioner did not afford the state courts a "full opportunity to resolve any constitutional issues by invoking one complete round of the [s]tate's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Moreover, Petitioner does not establish an exception to the procedural bar, such as cause, prejudice, or a fundamental miscarriage of justice.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   Petitioner's Petition for Writ of Habeas Corpus is **DENIED**
and this case is dismissed with prejudice.

2.   The Clerk of the Court shall enter judgment accordingly
and close this case.

DONE AND ORDERED in Fort Myers, Florida, on this ____ day of
May, 2007.

MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record